# SUPREME JUDICIAL COURT,

FOR THE COUNTY OF

# OXFORD.

## *AUGUST TERM,*

## 1824.

---

THE INHABITANTS OF SUMNER *vs.* THE INHABITANTS OF SEBEC.

A book found in the hands of the town clerk, and purporting to be a record of births and marriages in the town, is *prima facie* evidence of the facts it contains, though it may have no title, or certificate, or other attestation of its character.

Where a parent, on removing to a distant part of the State, left his daughter in the care of an inhabitant of her native town, to live with him till she should be eighteen years old, and be treated as his adopted child;—this was held to be no emancipation, the father having still the right to reclaim her.

Emancipation of a child is never to be presumed; but must always be proved.

THIS was *assumpsit* for the support of *Miriam Crocket*, a pauper, whose settlement in *Sebec* was said to be derived from her father, who was an inhabitant of that town at its incorporation in 1811.

At the trial before *Smith J.* in the Court below, the father of the pauper testified that he removed from *Sumner* to *Sebec* in *January* 1811;—that during his absence from home in the preceding summer, his wife, as she told him, put *Miriam* out to live with *Calvin Bisbee*, in *Sumner*, till she should be eighteen years of age, he engaging to treat her as one of his own children;—that he accordingly left her with *Bisbee*, never expecting to have any more control over her; and had never seen her since. He believed she was born in 1800, but the town records of *Sumner*, he said, would tell.

The said *Bisbee* testified that he took the girl in 1810, to live with him till she was eighteen years old, or so long as they should be mutually satisfied;—that she was to fare as one of his own children;—but that the father had a right to take her away at his pleasure, and the witness had the same right to send her away; —that she did live with him till she was eighteen, after which she had received her own earnings,—that she was born and had always dwelt in *Sumner*, except a short residence in *Buckfield*; and had never been in *Sebec*.

Another witness testified that about the same time the mother of the pauper offered her to him on the same terms; and that *Bisbee* took her as he testified.

The mother of the pauper testified that *she gave* the child to *Bisbee*, never expecting to have any farther authority or control over her, and not doubting but he would consider her in all respects as his adopted child; that he agreed so to treat her;—that she was then over eleven years old;—and that she had never seen her since.

The defendants alleged that the pauper was of age at the passage of the law of *March* 21, 1821, and thus capable of acquiring a settlement under it. To this point the plaintiffs called the town clerk of *Sumner*, who produced a book which he received from his predecessor in office, containing memoranda of sundry births and marriages in that town; and which was delivered to him as an official record, but contained no title or attestation of its character, nor any certificate shewing by whom the entries in it were made. The admission of this book was objected to, but the Judge overruled the objection. The book contained the name of *Miriam Crocket*, as having been born *June* 27, 1800; but there was no evidence shewing when or by whom it was recorded.

The Judge upon this evidence instructed the jury that if they were satisfied that the pauper was not of age on the 21st of *March*, 1821, under the circumstances of this case she was not emancipated, but followed the settlement of her father. And they found for the plaintiffs. To which the defendants alleged exceptions, pursuant to the statute.

*Greenleaf*, in support of the exceptions, maintained these two positions;—1st. That the book was not admissible in evidence, without previous proof of its authenticity as a public record, or that the entries in it were in the hand writing of the town clerk. *Highland Turnpike Co. v. McKean* 10 *Johns.* 154. —2d. That the pauper was capable of gaining a settlement by residence in *Sumner* at the passage of the act of *March* 21, 1821, she having been emancipated by her father, and not being proved to be a minor.

*Fessenden* and *Brown*, for the plaintiffs, contended that the book, being referred to in the deposition of the father, was placed at least on the footing of an entry in the family bible, or any other domestic memorandum; and so was intitled to inspection. But it was of a higher grade of evidence, being proved to be kept by the town clerk *as* a public registry of marriages and births.

As to emancipation, this exists only where the child is placed beyond the reach and control of the parent. But in this case it was not so. The person with whom she dwelt expressly disclaimed any exclusive right to her services or the custody of her person. And if he once had such right, it expired on her attaining the age of eighteen years, when all the authority of the father revived. Her subsequent care of herself and receiving her own earnings creates no difference in the case. *Somerset v. Dighton* 12 *Mass.* 383.

Mellen C. J. delivered the opinion of the Court.

In this case it is admitted that the pauper has her legal settlement derived from her father, in the town of *Sebec*, unless she has gained one elsewhere. The defendants contend that she has gained a settlement in *Sumner* under the act of 1821, *ch.* 122;— that she was twenty one years of age before the said act was passed; or, if not, that she had before that been emancipated by her father; and so, on either ground she had the capacity to gain a settlement for herself, and did gain one in *Sumner*, by residing, dwelling and having her home in that town on the day of the passage of the act.

The question as to her age has been settled by the jury. They have found she was under the age of twenty one on the 21st of

*March* 1821; and on *this* point, the verdict is conclusive, provided the book which was offered in evidence was properly admitted. This book *purported* to contain a record of births and marriages in *Sumner*; but was not *attested* in any part of it, by any town clerk, that it was such a record. It was, however, produced at the trial by the acting town clerk of *Sumner*; and it is stated that *he* received it from the *former* town clerk, who delivered it to him as the *record* of births and marriages in that town. There was no suggestion of fraud or fabrication at the trial, or in the argument; and considering all the circumstances in which the book was offered in evidence, we think it was proper as *prima facie* proof of the age of the pauper, and, on that ground, admissible. The exception to this opinion of the Court is, therefore, not sustained.

The next inquiry is, whether the pauper had been emancipated. The proof in the case has reference only to the period between the time when she was placed in the family of *Bisbee,* and her arrival at the age of eighteen;—and by the evidence it appears, that during that period *Bisbee* had a right to turn her away when dissatisfied; and her father also had a right to rescind the contract at pleasure, and reclaim his daughter, and exact her services;—and besides, *after* the age of *eighteen* the father had a right to these services until her age of *twenty one,* and the case shews no renunciation of this right. Emancipation is not to be *presumed*; it must be *proved*. And we are all well satisfied that the facts presented to our consideration do not shew an emancipation of the pauper. Of course she could not gain a settlement in her own right at the time and in the manner supposed. On this ground also the defendants fail. The consequence is, that the exceptions are overruled, and the judgment of the Court of Common Pleas is affirmed.